<u>NOT FOR PUBLICATION</u>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| RUSSELL JOHNS, | |
| Plaintiff, | CIVIL NO. 05-5689(NLH) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | **OPINION** |
| Defendant. | |

**APPEARANCES:**

John F. Kearney III, Esquire
720 East Main Street, Suite 2S
Moorestown, NJ 08057

    Attorney for Plaintiff

Christopher J. Christie
United States Attorney
    By:  Arthur Swerdloff, Esquire
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278

    Attorney for Defendant

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying the application of Plaintiff for Disability Insurance Benefits and Supplemental

Security Income ("Social Security benefits") under Title II and
Title XVI of the Social Security Act.   42 U.S.C. § 401, et seq.
The issue before the Court is whether the Administrative Law
Judge ("ALJ") erred in finding that there was "substantial
evidence" that Plaintiff was not disabled prior to May 12, 2003.
For the reasons stated below, this Court will affirm that
decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Over the course of his adult life, Plaintiff, Russell Johns,
was employed as a delivery truck driver and school bus driver,
with his last gainful employment ending October 16, 1998.   On
September 24, 2001, Plaintiff applied for Social Security
benefits, claiming that he had been disabled since he stopped
working in October 1998 due to severe pain and stiffness in his
hips, knees and lower back.   Plaintiff applied for Social
Security benefits, and after a hearing before an ALJ, it was
determined that Plaintiff was not "disabled" within the meaning
of the Social Security Act.   Plaintiff appealed the decision, and
the Appeals Council denied Plaintiff's request for review.
Plaintiff now seeks this Court's review.

## II.   DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's

application for Disability Insurance Benefits.  <u>Ventura v.</u>
<u>Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must
uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383©)(3); <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 38 (3d Cir. 2001);
<u>Sykes v. Apfel</u>, 228 F.3d 259, 262 (3d Cir. 2000); <u>Williams v.</u>
<u>Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial
evidence means more than "a mere scintilla."  <u>Richardson v.</u>
<u>Perales</u>, 402 U.S. 389, 401 (1971)(quoting <u>Consolidated Edison Co.</u>
<u>V. NLRB</u>, 305 U.S. 197, 229 (1938)).  It means "such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  <u>Id.</u>  The inquiry is not whether the reviewing
court would have made the same determination, but whether the
Commissioner's conclusion was reasonable.  <u>See</u> <u>Brown v. Bowen</u>,
845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its
totality.  <u>See</u> <u>Daring v. Heckler</u>, 727 F.2d 64, 70 (3d Cir. 1984).
"[A] court must 'take into account whatever in the record fairly
detracts from its weight.'" <u>Schonewolf v. Callahan</u>, 972 F. Supp.
277, 284 (D.N.J. 1997) (quoting <u>Willbanks v. Secretary of Health</u>
<u>& Human Servs.</u>, 847 F.2d 301, 303 (6th Cir. 1988) (quoting
<u>Universal Camera Corp. V. NLRB</u>, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his
reasons for rejecting or discrediting competent evidence."  <u>Ogden</u>

3

v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster
v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has
held that an "ALJ must review all pertinent medical evidence and
explain his conciliations and rejections." Burnett v. Comm'r of
Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly,
an ALJ must also consider and weigh all of the non-medical
evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d
871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d
Cir. 1981).

The Third Circuit has held that access to the Commissioner's
reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained the
> weight he has given to obviously probative
> exhibits, to say that his decision is
> supported by substantial evidence approaches
> an abdication of the court's duty to
> scrutinize the record as a whole to determine
> whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an
ALJ, as the fact finder, must consider and evaluate the medical
evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no
requirement that the ALJ discuss in its opinion every tidbit of
evidence included in the record," Hur v. Barnhart, 94 Fed. Appx.
130, 133 (3d Cir. 2004).  In terms of judicial review, a district
court is not "empowered to weigh the evidence or substitute its
conclusions for those of the fact-finder." Williams, 970 F.2d at
1182.  Moreover, apart from the substantial evidence inquiry, a

4

reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical and/or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. <u>See</u> 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if his physical or mental impairments are of such severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  42 U.S.C. § 1382c(a)(3)(B)(emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential

analysis.  See 20 C.F.R. § 404.1520.  This five-step process is
summarized as follows:

1.    If the claimant currently is engaged in substantial
      gainful employment, he will be found "not disabled."

2.    If the claimant does not suffer from a "severe
      impairment," he will be found "not disabled."

3.    If the severe impairment meets or equals a listed
      impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1
      and has lasted or is expected to last for a continuous
      period of at least twelve months, the claimant will be
      found "disabled."

4.    If the claimant can still perform work he has done in
      the past ("past relevant work") despite the severe
      impairment, he will be found "not disabled."

5.    Finally, the Commissioner will consider the claimant's
      ability to perform work ("residual functional
      capacity"), age, education, and past work experience to
      determine whether or not he is capable of performing
      other work which exists in the national economy.  If he
      is incapable, he will be found "disabled."  If he is
      capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is
therefore dependent upon a finding that the claimant is incapable
of performing work in the national economy.

     This five-step process involves a shifting burden of proof.
See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150,
1153 (3d Cir. 1983).  In the first four steps of the analysis,
the burden is on the claimant to prove every element of his claim
by a preponderance of the evidence.  See id.  In the final step,
the Commissioner bears the burden of proving that work is
available for the plaintiff: "Once a claimant has proved that he

is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

### C.   Analysis

The ALJ determined that Plaintiff was not disabled during the relevant time period beginning on October 16, 1998 and continuing through June 30, 2003.  The ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period (Step One) and that Plaintiff's back, hip and knee pain and depression were severe (Step Two).  The ALJ found, however, that Plaintiff's impairments did not meet or medically equal the listed impairments (Step Three).  The ALJ concluded that during the relevant time period, Plaintiff's past relevant work did not require performance of work-related activities that were precluded by his impairments (Step Four).

Plaintiff's appeal presents two main issues for review: (1) whether there was substantial evidence to support the Commissioner's finding that Plaintiff was not disabled during the relevant time period, and (2) whether a consideration of Plaintiff's limiting impairments entitles Plaintiff to a reversal of the ALJ's Step Four determination, as well as a Step Five finding of "disabled."

**1.  Whether there was substantial evidence to support the Commissioner's finding that Plaintiff was not disabled during the relevant time period**

Plaintiff raises seven issues with regard to the ALJ's consideration of the medical record:

>  (1)  Whether the ALJ's Step Three analysis failed to determine whether Plaintiff's impairments, in combination, were medically equivalent to a listed impairment.

>  (2)  Whether the ALJ properly considered the medical evidence regarding the side-effects of Plaintiff's medication.

>  (3)  Whether the ALJ improperly assessed Plaintiff's mental impairments by failing to order a consultative psychiatric examination, substituting his own opinion for that of a competent physician, and failing to assess the impact of mental impairments on Plaintiff's residual functional capacity and ability to perform past relevant work.

>  (4)  Whether, in assessing Plaintiff's residual functional capacity and ability to perform past relevant work, the ALJ only considered physical exertional impairments, failed to consider medical evidence contrary to the state examiner's RFC

8

assessment, and failed to consider the impact of Plaintiff's postural limitations.

(5)   Whether the ALJ wrongly discounted medical reports on the basis that the reports were retrospective.

(6)   Whether the ALJ's failure to fully credit Plaintiff's subjective symptoms is unsupported by substantial evidence.

(7)   Whether appropriate weight was assigned to the opinions of Plaintiff's treating physicians and examining physicians.

**(1)   Assessment of impairments in combination**

Plaintiff first argues that the ALJ's Step Three analysis failed to determine whether Plaintiff's impairments, in combination, were medically equivalent to a listed impairment.[1] Plaintiff argues that the ALJ's findings included nothing more than conclusory statement using the term "in combination." Plaintiff also argues that Social Security policy dictates that the ALJ must include an analysis of whether and why those impairments, when combined, are equivalent to a listed impairment.

Plaintiff's arguments on these issues are unpersuasive.

---

[1] The Court notes that Plaintiff offers no explanation of which combination of impairments should have been considered by the ALJ or for which listed impairment the combination of impairments would qualify.

Step Three requires the ALJ to determine whether any severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and has lasted or is expected to last for a continuous period of at least twelve months.  When identifying a severe impairment, "any impairment or combination of impairments which significantly limits a claimant's physical or mental ability to do basic work activities" is considered.  20 C.F.R. § 404.1520(c).

In Step Three of the sequential analysis, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or equaled the criteria of any listed impairment."  (R. at 27.)  This determination was based on an extensive review of the impairments listed in Section 1.00 – Musculoskeletal system, Section 4.00 – Cardiovascular system, Section 9.00 – Endocrine system, and Section 12.00 – Mental disorders.  Contrary to Plaintiff's argument, the ALJ did explicitly consider the combination of Plaintiff's adrenal cortex hyperfunction and his depressive disorder by noting "the claimant's endocrine dysfunction has contributed to and co-exists with his depressive disorder."  (R. at 28.)  This analysis subsequently led to the ALJ finding that the severity of Plaintiff's depressive disorder did not result in limitations meeting the criteria of Section 12.04 – Affective disorders; thus, the ALJ did in fact consider a combination of impairments

10

when formulating the findings.

Plaintiff's argument is also unpersuasive because it overstates the holding of Burnett v. Commissioner of Social Security Administration, 220 F.3d 112 (3d Cir. 2000). Plaintiff argues that Burnett requires remand when an ALJ has not fully explained the findings at Step Three when he has not included an analysis of whether and why the combined impairments are not equivalent to any listed impairments. In Burnett, the ALJ did nothing more than state a general finding that the plaintiff's impairments did not meet any listed impairment. Burnett, 220 F.3d at 120. The ALJ's decision was "beyond meaningful judicial review" because it did not identify relevant listed impairments to be considered and lacked any meaningful discussion of the evidence or explanation of reasoning. Id. The court's decision in Burnett directed that, in order to meet the well-established substantial evidence standard at Step Three, the ALJ must include "a discussion of the evidence and an explanation of reasoning supporting a determination that [a claimant's] 'severe' impairment does not meet or is not equivalent to a listed impairment." 220 F.3d at 120. Contrary to Plaintiff's suggestion, Burnett did not require a particular emphasis on a consideration of a combination of impairments. Instead, the Burnett court simply disapproved of the ALJ's failure to explain whether either the plaintiff's individual impairments or a

11

combination thereof were equivalent to a listed impairment.

Here, such deficiencies in the ALJ's analysis do not exist. As stated above, the ALJ properly conducted the Step Three analysis by comparing Plaintiff's conditions to those most closely related to listed impairments in Section 1.00 – Musculoskeletal system, Section 4.00 – Cardiovascular system, Section 9.00 – Endocrine system, and Section 12.00 – Mental disorders.  The ALJ provided both an evidentiary discussion and an explanation of reasoning for each relevant listing.  For example, the ALJ explained the findings regarding Section 4.03 – Hypertensive cardiovascular disease by referring to the inconsistent severity of Plaintiff's hypertensive level during the period in question.  (R. at 28.)  Such an explanation meets the substantial evidence requirements for a sufficient Step Three analysis.

### (2)   Assessment of medication side-effects

Plaintiff next argues that the ALJ did not properly consider the medical evidence regarding the side-effects of Plaintiff's medication.  Plaintiff claims that no reference was made as to the impact of medication side-effects on his residual functional capacity.  Plaintiff further claims that extreme fatigue caused by medication rendered him unable to perform unskilled or semi-

12

skilled labor.

Plaintiff's arguments on these issues are also unpersuasive. Although medication side-effects are not expressly mentioned in the ALJ's enumerated findings (R. at 39), several aspects of the ALJ's decision indicate that the impact of medication side-effects was sufficiently considered.  Most importantly, the ALJ expressly outlined seven factors addressed in the assessment of Plaintiff's subjective impairment complaints, and specifically considered "Type, dosage, effectiveness, and adverse side-effects of any pain or other medication," which is the third of these factors.  (R. at 36-37.)  During his analysis of the third factor, the ALJ made numerous references to prescriptions and adjustments of Plaintiff's medications.  (R. at 29-35.)  For example, when assessing Plaintiff's hypertension, the ALJ included evidence that Plaintiff's dosage of Atenolol was decreased due to side-effects.  (R. at 31.)

Using the seven subjective factors in conjunction with the reports of several practitioners, the ALJ determined that Plaintiff's claimed impairments seemed exaggerated.  Specific to medication side-effects, the ALJ found that the conclusions of Richard E. Rubin, M.D.--that Plaintiff's drowsiness, dizziness and lethargy symptoms were caused by medications including

13

Norvasc, Naproxen, Lisinopril, Spironolactone, and Klonopin--was exaggerated.  (R. at 36.)  The ALJ noted that Dr. Rubin's assessment was inconsistent with the entirety of the medical evidence and that Dr. Rubin had difficulty obtaining a coherent medical history from Plaintiff.  Consequently, the ALJ properly assessed the impact of medication side-effects, including fatigue, on Plaintiff's residual functional capacity.

### (3)  Assessment of mental impairments

Plaintiff also argues that the ALJ did not properly assess Plaintiff's mental impairments by failing to order a consultative psychiatric examination, substituting his own opinion for that of a competent physician, and failing to assess the impact of mental impairments on Plaintiff's residual functional capacity and ability to perform past relevant work.

A proper assessment of mental impairments is outlined in 20 C.F.R. § 404.1520a.  If medically determinable mental impairments are identified, the ALJ must specify the findings that substantiate the presence of the impairments and rate the degree of functional limitation resulting from the impairments.  20 C.F.R. § 404.1520a(b).  Impairments are rated as to the extent that one's ability to function independently, appropriately, effectively and on a sustained basis is affected.  20 C.F.R. §

14

404.1520a(c)(1).[2]  After the rating, the severity of the
impairments is examined to identify whether a listed impairment
or an equivalent exists. 20 C.F.R. § 404.1520a(d).  Finally, 20
C.F.R. § 404.1520a(e)(2) requires that the ALJ's decision
incorporate the relevant history and findings of examinations as
well as existing functional limitations that led to the decision.

Here, the ALJ properly assessed Plaintiff's mental
impairments by following the procedures of 20 C.F.R. § 404.1520a.
It is undisputed that the ALJ found the medical evidence to
indicate that Plaintiff's severe impairments included depression.
(R. at 27.)  Contrary to Plaintiff's claim, the result was not a
substitution by the ALJ's own judgment.  Specifically, the ALJ
referred to psychiatric hospitalizations from November 30 to
December 3, 1994 and February 5-10, 1995.  Records of these
hospital stays revealed that Plaintiff's condition was controlled
by medication and was improving.  In addition, the ALJ's decision
outlines Plaintiff's examinations by Dr. Rubin.  As discussed
above, the ALJ found Dr. Rubin's reports to be exaggerated and

_____

[2] Four functional areas are identified in 20 C.F.R. §
404.1520a(c)(3) to rate the degree of limitation: Activities of
daily living; social functioning; concentration, persistence, or
pace; and episodes of decompensation.  The limitation of the
first three areas is rated: None, mild, moderate, marked, and
extreme, while the number of episodes of decompensation are
numbered.  20 C.F.R § 404.1520a(c)(4).

contrary to the medical record as a whole.

The ALJ also determined that Plaintiff's past relevant work did not require performance of activities precluded by his medically determinable impairments.  These impairments clearly include mental impairments, which, as discussed above, were analyzed at some length by the ALJ.  Further, item 8 of the ALJ's enumerated findings includes "depression" among the impairments that do not prevent Plaintiff from performing past relevant work. The presence of Plaintiff's mental impairment was substantiated, as required, by the ALJ's reference to two psychiatric hospitalizations (R. at 29) and two evaluations conducted by Dr. Rubin.  (R. at 32, 35.)  Using this evidence in conjunction with the entire medical record, the ALJ concluded that Plaintiff's restriction of activities of daily living, difficulties in maintaining social function, concentration, persistence or pace were all rated "mild" and no episodes of decompensation were documented. (R. at 28.)  As previously discussed in the Step Three analysis, the ALJ also determined that Plaintiff's impairments did not meet a listed or equivalent mental disorder. Contrary to Plaintiff's claims, mental impairment was sufficiently addressed.

16

### (4)   Residual functional capacity assessment

Plaintiff next argues that the ALJ only considered physical exertional impairments in assessing Plaintiff's residual functional capacity and ability to perform past relevant work. Plaintiff also argues that the ALJ failed to mention medical evidence contrary to the state examiner's RFC assessment and failed to consider the impact of postural limitations on Plaintiff's ability to do light or sedentary work.

Contrary to Plaintiff's argument, the ALJ did review non-physical impairments.  For reasons already addressed, the ALJ sufficiently considered both mental impairments and medication side-effects in assessing Plaintiff's ability to perform past relevant work.  The ALJ also considered evidence of Plaintiff's hearing loss in assessing residual functional capacity.  First, hearing loss was among the subjective allegations considered by the ALJ, which he had deemed exaggerated and not entirely credible in light of the entire medical record.  (R. at 36-37.) Second, even though Plaintiff claims to have suffered bilateral hearing loss of sixty to eighty percent, and he cites only to William Berna, M.D.'s March 2, 2002 letter authorizing the fitting of a hearing aid (R. at 184), there is no mention of bilateral hearing loss of sixty to eighty percent in that

document.

Also contrary to Plaintiff's argument, the ALJ did consider evidence in opposition to the state examiner's RFC assessment of Plaintiff's ability to do light or sedentary work.  The state examiner found that Plaintiff could carry up to fifty pounds occasionally and twenty-five pounds frequently.  Also, the state examiner found that Plaintiff could stand or walk for up to six hours and sit for up to six hours.  Numerous medical reports are included in the ALJ's discussion of evidence that contradict the state examiner.  First, the ALJ refers to two contradicting medical reports immediately after outlining the state examiner's RFC assessment.  Ralph G. Cataldo, D.O. examined Plaintiff's back, joints, hips, legs, knees and feet.  After examining several range of motion measurements and the general condition of Plaintiff's body, Dr. Cataldo found that Plaintiff was unable to perform as a delivery truck driver or any other significant gainful activity for more than a year.  (R. at 34-35.)  The ALJ considered Dr. Cataldo's report and was not persuaded.  The ALJ noted that the examination occurred over eighteen months after Plaintiff's insured status expired and that Dr. Cataldo's findings were inconsistent with the entirety of the record.

Next, the ALJ considered Dr. Rubin's January 21, 2005

18

report, which also contradicted the state examiner's RFC
assessment.  As discussed above, the evidence presented by Dr.
Rubin was fully considered and deemed exaggerated and
inconsistent with the entirety of the record.  Finally, the
February 23, 2005 report of Dr. Berna, which also contradicts the
findings of the state examiner, was included in the ALJ's
analysis.  The ALJ stated that the doctor's report was not
supported by the objective evidence of the record (R. at 36),
which indicates that Plaintiff could lift up to fifty pounds and
perform as a driver.

Additionally, the ALJ properly considered Plaintiff's
postural limitations when considering the state examiner's RFC
assessment.  Plaintiff's postural limitations are expressly
included in the ALJ's review of the state examiner's findings,
which declared Plaintiff to be restricted to occasional stooping,
kneeling, crouching, etc.  (R. at 34.)  Applying this evidence,
the ALJ determined that, although Plaintiff could not perform
past relevant work as he previously had done, he could return to
such work as commonly performed in the national economy.  School
bus driving and delivery truck driving do not necessarily include
work as demanding as Plaintiff had performed it while employed as

an X-Ray equipment delivery driver.[3]  The ALJ deemed Plaintiff's
past work as a truck driver to be heavy exertional level and his
past work as a bus driver as medium level work.[4]  The state
examiner's finding that Plaintiff, despite having some
limitations, could lift up to fifty pounds and sit for up to six
hours, which is equivalent to medium level work, indicates that
the ALJ fully considered and accounted for the evidence of
postural limitations.

### (5)  Discounting of medical reports

Plaintiff also argues that the ALJ wrongly discounted the
medical reports of Dr. Ralph Cataldo, Dr. Rubin, and Aurora Dela
Rosa, M.D. on the basis that the reports were retrospective.
This argument is unpersuasive.  First, Plaintiff refers to two
prior examinations by Dr. Cataldo (an October 24, 2000 evaluation
and a February 6, 2001 diagnostic update) (R. at 305) to argue
that a report from January 7, 2005 should be given more weight.
The findings of these earlier appointments as to Plaintiff's
impairments, however, are not included in the January 7, 2005

---

[3] School bus driving is considered medium exertional level work.
Delivery driver is considered medium work, also having categories
for both light and heavy truck drivers.  (R. at 38.)
[4] A medium level determination was based on requirement of lifting
up to twenty-five pounds and sitting for prolonged periods.

document in the medical record.  (R. at 305).[5]  Thus, any useful medical information could only be derived from the January 7, 2005 exam, which occurred after the relevant period.  Further, the timing of Dr. Cataldo's examinations was not the only factor cited by the ALJ in assigning little weight to the January 7, 2005 report.  The ALJ also found that the examiner's opinions were derived from Plaintiff's subjective allegations, which were not consistent with the medical record as a whole.

Plaintiff also is unconvincing in claiming that the ALJ wrongly disregarded Dr. Rubin's medical reports.  Dr. Rubin's March 27, 2001 examination, upon which Plaintiff relies to demonstrate the relevance of Dr. Rubin's January 21, 2005 report, was assigned little weight by the ALJ.  Again, the ALJ found that the opinion was inconsistent with the entirety of the medical record and was exaggerated.

Finally, Plaintiff's argument that Dr. Dela Rosa's June 29, 2005 examination was improperly disregarded is unpersuasive. Even though Dr. Dela Rosa is qualified to assess a patient's disabilities, the exclusion of her report does not require

---

[5] Dr. Cataldo's January 7, 2005 report lists the October 24, 2000 evaluation and the February 6, 2001 updated diagnostic studies as part of Plaintiff's medical history, but the report does not disclose any findings or test results from those earlier appointments.

remand.  Unlike Dr. Rubin and Dr. Cataldo, who both treated
Plaintiff during the relevant period, Dr. Dela Rosa's June 29,
2005 examination was the physician's first and only examination
of Plaintiff.  Moreover, while Plaintiff correctly states that
retrospective medical opinions may be useful in determining the
onset of disabilities, the circumstances here are quite different
than those cited by Plaintiff in McAdams v. Secretary of Health
and Human Services, 726 F. Supp. 579, 588-89 (D.N.J. 1989).  In
McAdams, the exclusion of a physician's report was improper
because the report was consistent with the medical record and
also resulted from several months of treatment by a particular
physician.  Here, Dr. Dela Rosa's findings, which were similar to
Dr. Rubin's and Dr. Cataldo's, are inconsistent with the medical
record, and lack a significant history of treatment, which under
Martin makes retrospective reporting more valuable.

### (6)  Assessment of subjective complaints

Plaintiff next argues that the ALJ's failure to fully credit
Plaintiff's subjective symptoms is unsupported by substantial
evidence.  Plaintiff correctly notes that subjective complaints
of pain are to be given considerable recognition and cannot be
discounted without contrary medical evidence.  Ferguson v.
Schweiker, 765 F.2d 31, 37 (3d Cir. 1985).  Plaintiff asserts

that ample objective evidence exists to support the subjective symptoms described.  Among the objective evidence Plaintiff emphasizes are an MRI exam indicating degenerative disc disease, facet arthrosis and disc bulges of the back, as well as records from Dr. Berna documenting degenerative joint disease, arthritis and numerous other painful symptoms. (Plaintiff's Brief at 27.)

Here, the ALJ sufficiently assessed Plaintiff's subjective complaints by considering objective medical evidence both in support of and contrary to the subjective complaints.  The ALJ's findings as to the subjective claims were made, "in light of the above-described reports," which included the MRI results and the reports of Dr. Berna upon which Plaintiff relies.  The ALJ listed seven factors to be considered, as required under 20 C.F.R. § 404.1529, to assess Plaintiff's subjective complaints: (i) The nature, location, onset, duration, frequency, radiation, and intensity of any pain or other symptoms; (ii) Precipitating and aggravating factors; (iii) The type, dosage, effectiveness, and adverse side-effects of any pain or other medication; (iv) Treatment, other than medication, for relief of pain or other symptoms (see previous discussion of medication side-effects); (v) Functional restrictions; (vi) Claimant's daily activities; (vii) Any measures other than treatment an individual uses to

relieve pain or other symptoms; and  due to pain or other

symptoms.

Using this framework, the ALJ considered evidence contrary

to Plaintiff's testimony to find that Plaintiff's subjective

claims were somewhat exaggerated.  Primarily, the ALJ relied upon

the nature of Plaintiff's treatment and the results of MRI and

EMG exams.  Tim Pinsky, D.O. characterized Plaintiff's treatment

as totally conservative and also observed that there was little

evidence to support Plaintiff's subjective claims.  (R. at 37.)

Additionally, the ALJ noted that the results of Plaintiff's MRI

and EMG exams showed only mild abnormalities.  Having considered

all the applicable evidence, as required under 20 C.F.R. §

404.1529 and <u>Ferguson</u>, the ALJ had substantial evidence to find

that Plaintiff's subjective claims did not support a reduction in

residual functional capacity.

### (7)  **Weight of treating physician and examining physician reports**

Finally, Plaintiff argues that appropriate weight was not

assigned to the opinions of his treating physicians and examining

physicians.  Plaintiff argues that the opinions of William Berna,

M.D., John M. Gray, M.D., Maria D. Duca, M.D., and Susan

Entmacher, M.D., all treating physicians, were improperly

afforded little or no weight.  Additionally, Plaintiff argues

24

that the opinions of Dr. Rubin and Dr. Cataldo, examining physicians, were not afforded proper weight.  As Plaintiff correctly notes, under 20 C.F.R § 404.1527, treating physicians are given controlling weight when they are not "inconsistent with the other substantial evidence in your case record."  20 C.F.R § 404.1527(d)(2).  Plaintiff fails to note, however, that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."  20 C.F.R § 404.1527(d)(4).  Plaintiff points out that each of his treating physicians reported physical and mental impairments.  The record is full of reports regarding the condition of Plaintiff's legs, hips, knees, back and mental state.  There is also, however, contrary evidence that was reviewed by the ALJ.  The state examiner's RFC assessment, MRI and EMG exams, and the reports of Robert F. Brill, M.D. and Tim Pinsky, D.O. contradict the opinions of Plaintiff's treating physicians.  The existence of this evidence reduces the weight afforded to Plaintiff's treating physicians and renders it non-controlling.  Instead, treating reports are weighed against the record as a whole.

As previously stated, the ALJ found that the opinions of both Dr. Rubin and Dr. Cataldo are inconsistent with the record as a whole.  Contrary evidence was evaluated by the ALJ,

lessening the weight afforded to these opinions.  Further, 20
C.F.R § 404.1527(e)(1) states that medical sources shall provide
evidence regarding impairments, but decisions on disability are
reserved to the Commissioner.  Plaintiff relies on the opinions
of Dr. Rubin and Dr. Cataldo, which both declare Plaintiff
disabled.  (R. at 35-36.)  Opinions regarding disability,
however, are reserved to the Commissioner.  The ALJ properly
focused on medical evidence instead of declarations of disability
in formulating the findings of this case.

**2.   Whether an improper consideration of Plaintiff's
limiting impairments entitles Plaintiff to a reversal
of the ALJ's Step Four determination and a finding of
"disabled" under Step Five**

Plaintiff first argues that the ALJ's Step Four
determination that he is able to return to past relevant work is
legal error and requires reversal.  Plaintiff argues that the ALJ
erred in finding that, despite some postural limitations, he
could return to past relevant work that has been categorized as
medium exertional work.  Plaintiff misconstrues the ALJ's finding
and also misapplies the applicable standard.  Plaintiff ignores
the possibility that, although limitations may preclude him from
returning to past relevant work as he once performed it, those
same limitations do not necessarily preclude him from returning

to past relevant work as it is commonly performed in the national economy.  Here, the ALJ was fully aware of Plaintiff being limited to "only occasional balancing, stooping, kneeling, crouching, crawling and climbing." (R. at 38.)  Other evidence was also considered, however, which indicated that Plaintiff could return to his past relevant work as a school bus driver as he had once performed it, and as a delivery truck driver as commonly performed in the national economy.  Plaintiff's ability to lift fifty pounds occasionally and twenty-five pounds frequently as well as his ability to sit for prolonged periods allowed the ALJ to make this determination.

Plaintiff cites S.S.R. 85-15 in arguing that Plaintiff would need the ability the stoop frequently to perform past relevant work as a delivery truck or school bus driver.  S.S.R. 85-15 states that frequent lifting is required for most medium work, but this does not itself preclude the ALJ from finding that Plaintiff could perform some form of past relevant work.  This standard was considered by the ALJ in conjunction with Plaintiff's description of his past relevant work.  For example, Plaintiff stated that school bus driving required him to lift up to twenty-five pounds, which he was deemed capable of doing frequently.  (R. at 38.)  Therefore, Plaintiff was found capable

of some types of medium work, including school bus driving and delivery truck driving, although not as previously performed by Plaintiff, but as is done in the national economy.

Plaintiff also asserts that the ALJ's Step Four finding is erroneous because school bus driving requires good hearing. S.S.R. 85-15 does mention bus driver as an occupation that requires good hearing. Plaintiff, however, has offered no evidence of hearing impairments other than Dr. Berna's authorization for fitting Plaintiff with a hearing aid. (R. at 184.) There is no report specific to Plaintiff's bilateral hearing loss. Further, the observations of Plaintiff's disability report found no difficulty with hearing. (R. at 98.)

Finally, Plaintiff argues that he is entitled to a Step Five finding of "disabled." Because the ALJ properly reached a "not disabled" decision at Step Four, finding that Plaintiff could return to past relevant work, a Step Five determination was unnecessary. Moreover, Plaintiff's use of the "Grids" 20 C.F.R. Subpart P, App. 2, Rule 202.06 is overstated. Rule 202.06 and Plaintiff's argument assume that Plaintiff's skills are non-transferable. Rule 202.00, sections (e) and (f) suggest otherwise. First, section (e) states that "The acquisition of work skills demonstrates the ability to perform work at the level

of complexity demonstrated by the skill level attained regardless of the individual's formal educational attainments."  Section (f) indicates that skills of advanced-age workers are transferable when there is little if any vocational adjustment required.  The ALJ determined that Plaintiff was capable of returning to past relevant work as performed in the national economy and, despite physical limitations, was capable of medium level work. Plaintiff presumably could find work where little vocational adjustment was required and would not be impaired by his lack of education.  Therefore, the ALJ correctly did not proceed past Step Four.

**III. Conclusion**

For the reasons expressed above, the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence.  Accordingly, the decision of the ALJ is affirmed.  An accompanying Order will be issued.


Date: <u>June 29, 2007 </u>          <u>s/ Noel L. Hillman          </u>

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

29